## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

IN RE: )
           )    Case No. 26-20026
CHRISTOPHER GEORGE RATCLIFF )    Chapter 13
and KIMBERLY A. RATCLIFF, )
           )
               Debtors. )

## <u>MOTION FOR RELIEF FROM STAY</u>

**COMES NOW** The Bank of Tescott ("***Bank***"), by and through its attorneys, Kennedy Berkley, P.A., and moves the Court for an Order granting it relief from the Bankruptcy automatic stay, pursuant to 11 U.S.C. § 362. In support thereof, Bank states:

1.      Christopher George Ratcliff and Kimberly A. Ratcliff (collectively, the "***Debtors***") filed their voluntary petition under Title 11 U.S.C. Chapter 13 on January 13, 2026 ("***Petition Date***").

2.      Bank is a secured creditor herein by virtue of a promissory note executed by Debtors on November 6, 2019, in the original principal amount of $198,775.81 ("***Note***," attached hereto as Exhibit "A").

3.      The indebtedness of Debtors pursuant to the Note is secured by three mortgages executed by Debtors in favor of Bank (collectively, the "***Mortgages***," attached hereto as Exhibits "B-1, B-2, and B-3"), that granted to Bank first-priority mortgages in that certain real property legally described as follows (the "***Subject Property***"):

> Lot Nine (9), Block Five (5), Golden Eagle Estates Addition to the
> City of Salina, Saline County, Kansas.

4.      Bank perfected the Mortgages by recording the Mortgages with the Register of Deeds of Saline County, Kansas. As a result, Bank has a first and prior lien in the Subject Property that is superior to any other creditor.

In the United States Bankruptcy Court for the District of Kansas
**Re:** Christopher George Ratcliff and Kimberly A. Ratcliff
**Case No. 26-20026**
*Motion for Relief from Stay*

5.     The Note and the Mortgages are referred to collectively as the "***Loan Documents***."

6.     Bank's claim against Debtors pursuant to the Note as of the Petition Date was the following:

> Principal: $182,732.62
> Accrued Interest: $16,179.71
> Charges/Fees: $1,469.50
> Negative Escrow Balance: $16,321.09
> Payoff Amount: $215,746.57
> Daily Interest: $33.1672

7.     Bank estimates the value of the Subject Property to be $250,000.00.

8.     Prior to the Petition Date and since this bankruptcy case was filed, Debtors failed to make multiple payments and is in default under the Loan Documents.

9.     In addition, Debtors have accrued a negative escrow balance of $16,321.09 as Bank has continued to make payments towards the real estate taxes and insurance while not receiving payments from Debtors.

10.     One of the Debtors, Christopher George Ratcliff, was recently the debtor in another Chapter 13 bankruptcy case: 23-40699 (the "**2023 Chapter 13 Case**"), which was dismissed on August 6, 2025, because of Debtor's failure to make plan payments.

11.     Christopher George Ratcliff filed another Chapter 13 bankruptcy case on August 26, 2025, under case number 25-10904 (the "**2025 Chapter 13 Case**"), which was dismissed on November 26, 2025, for a myriad of reasons, which included failure to commence plan payments, the §341 meeting had not been concluded due to the Trustee's inability to verify debtors identity, the petition appeared to be inaccurate by not including all previously filed cases, and the plan was not filed in good faith as required by 11 USC §1325(a)(7).

2

In the United States Bankruptcy Court for the District of Kansas
Re: Christopher George Ratcliff and Kimberly A. Ratcliff
**Case No. 26-20026**
*Motion for Relief from Stay*

12. Christopher George Ratcliff's previous failures to make payments prior to the filing of the 2023 Chapter 13 Case and the continued failures to make payments in the 2023 Chapter 13 Case and the 2025 Chapter 13 Case that resulted in the successive dismissals of his 2023 Chapter 13 Case and 2025 Chapter 13 Case are the reasons why Debtors have gotten so far past due with regard to his loan payments and his escrow payments.

13. Debtors failed to disclose both of these bankruptcy filings on their Chapter 13 petition in this case, and Debtors also failed to disclose another bankruptcy case that was filed within eight years of this bankruptcy filing, which was a 2018 case where both Debtors filed a Chapter 13 case under 18-40040.

14. Debtors' previous failed Chapter 13 filings combined with Debtors' failure to disclose their previous bankruptcy filings are evidence of bad faith and justify the stay relief being requested in this Motion.

15. The stay order in this case should not have went into effect pursuant to 11 U.S.C. § 362(c)(3) as to Christopher George Ratcliff because the 2023 Chapter 13 Case and 2025 Chapter 13 Case were both dismissed within the preceding 1-year period prior to this case being filed. 11 U.S.C. § 362(c)(4)(A)(i).

16. Debtors' filing should be presumptively considered to not have been filed in good faith as to all creditors because more than one previous case under Chapter 13 in which Christopher George Ratcliff was a debtor was pending within the preceding 1-year period. 11 U.S.C. § 362(c)(3)(C)(i)(I).

17. Debtors' filing should be presumptively considered to not have been filed in good faith as to all creditors because a previous case was filed where the Debtor failed to file or amend

In the United States Bankruptcy Court for the District of Kansas
Re: Christopher George Ratcliff and Kimberly A. Ratcliff
**Case No. 26-20026**
*Motion for Relief from Stay*

the petition or other documents as required by this title or the Court without substantial excuse. 11 U.S.C. § 362(c)(3)(C)(i)(II)(aa).

18. Debtors' filing should be presumptively considered to not have been filed in good faith as to all creditors and Debtor's stay should not be extended because (a) the Debtor's previous bankruptcy cases were dismissed due to Debtor's failure to make plan payments and (b) there have been no substantial changes in the financial or personal affairs of the Debtors since the dismissal of the previous Chapter 13 cases, which both create a presumption that this Chapter 13 case was not filed in good faith. 11 U.S.C. § 362(c)(3)(C)(i)(II)(cc), (III).

19. Because the automatic stay in this case would be considered terminated pursuant to 11 U.S.C. § 362(c)(3), Bank is entitled to stay relief as to the Debtor and to continue to seek judgment against Christopher George Ratcliff.

20. Debtors' inability to make plan payments during the past two dismissed bankruptcy proceedings demonstrate that Debtors are incapable of complying with a bankruptcy plan and that this case and plan was not filed in good faith.

21. Debtors have failed to cure their negative escrow balance and have failed to accept the responsibility to pay those costs directly.

22. Bank is being harmed by its need to continue to advance payments towards insurance and real estate taxes while not being reimbursed by the Debtors and being prevented from foreclosing by virtue of Debtors' serial bankruptcy filings.

23. Debtors have failed to reimburse Bank for Bank's negative escrow balance pursuant to Bank's escrow agreement with Debtors and Debtors have continued to fail to pay their own real estate taxes or insurance, forcing Bank to further make advances to protect its collateral at Bank's

4

In the United States Bankruptcy Court for the District of Kansas
Re: Christopher George Ratcliff and Kimberly A. Ratcliff
**Case No. 26-20026**
*Motion for Relief from Stay*

own detriment. In addition, Debtors are not making adequate protection payments and have failed to demonstrate the ability to propose and perform under a feasible Chapter 13 plan considering the previous Chapter 13 cases were dismissed due to Debtors' failure to make plan payments.

24. Debtors' actions described in this Motion also demonstrate that they are serial filers engaging in bad faith filings solely to hinder, delay, and frustrate Bank's lawful foreclosure rights.

25. Based on the Debtors' actions before this Court, the Debtors have demonstrated that their plan is not realistically feasible.

26. For the aforementioned reasons, cause also exists under 11 U.S.C. § 362(d)(1) and (4) for this Court to issue an Order granting Bank relief from the automatic stay as to the Subject Property.

27. Specifically, Debtors request an Order from this Court stating that the filing of this petition in this case was part of a scheme to delay, hinder, or defraud creditors through multiple bankruptcy filings affecting the Subject Property pursuant to 11 U.S.C. § 362(d)(4) and that this Order shall be effective with respect to the Subject Property prospectively and be effective as to any future bankruptcy proceeding filed by either of the Debtors for the next two years from the date of the Order.

28. Nothing herein is to be construed as a final determination that Bank is the only secured creditor with regard to the Subject Property. Should there be any other secured creditors or parties who claim an interest in the Subject Property, Bank requests relief from the Bankruptcy automatic stay for all such secured creditors and parties.

5

In the United States Bankruptcy Court for the District of Kansas
Re: Christopher George Ratcliff and Kimberly A. Ratcliff
**Case No. 26-20026**
*Motion for Relief from Stay*

29. Bank also requests that the Court extinguish the fourteen (14) day stay pursuant to Fed. R. Bankr. P. 4001(a)(3) to preserve the integrity and value of the Subject Property because Debtor has failed to pay the real estate taxes or insurance for the Subject Property.

WHEREFORE, Bank prays for an order granting it relief from the bankruptcy automatic stay herein pursuant to 11 U.S.C. § 362(c)(3), (4) and 11 U.S.C. § 362(d)(1) and (4) with regard to the Subject Property; for an order permitting Bank to protect its interest in the Subject Property by any lawful means, without prejudice to the rights of other parties who may hold an interest in the Subject Property; for an order granting relief from the Bankruptcy automatic stay to any other secured creditors or parties who claim an interest in the Subject Property in this case and prospectively in any future bankruptcy proceeding filed by either of the Debtors for the next two years from the date of the Order; and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Klint A. Spiller
James R. Angell, #19329
Klint A. Spiller, #27641
KENNEDY BERKLEY, P.A.
119 West Iron Avenue, 7th Floor
P.O. Box 2567
Salina, KS 67402-2567
(785) 825-4674
Fax: (785) 825-5936
jangell@kenberk.com
kspiller@kenberk.com
*Attorneys for The Bank of Tescott*

In the United States Bankruptcy Court for the District of Kansas
Re:  Christopher George Ratcliff and Kimberly A. Ratcliff
**Case No. 26-20026**
*Motion for Relief from Stay*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of February, 2026, I electronically filed the above and foregoing Motion using the CM/ECF system which sent notification to all parties of interest participating in the CM/ECF system and I mailed a copy of the same via U.S. First Class Mail to the following parties:

Jeffrey L. Wagoner
W M Law
15095 W. 116th Street
Olathe, KS 66062
*Attorney for Debtors*

Christopher G. Ratcliff and Kimberly A. Ratcliff
1402 Lorianna Ct.
Salina, KS 67401
*Debtors*

William H Griffin
5115 Roe Blvd Ste 200
Roeland Park, KS 66205-2393
*Chapter 7 Trustee*

Office of the United States Trustee
301 North Main Suite 1150
Wichita, KS 67202

/s/ Klint A. Spiller
Klint A. Spiller, #27641

7

## Promissory Note

Pms/REL/coupons

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS | |
|---|---|---|
| CHRISTOPHER G RATCLIFF and<br>KIMBERLY A RATCLIFF<br>1402 LORIANNA CT Salina, KS 67401 | The Bank of Tescott<br>P O Box 2537<br>Salina, KS 67402-2537 | Loan Number: ▮400<br>Date: 11/06/2019<br>Maturity Date: 11/15/2049<br>Loan Amount: $ 198,775.81<br>Renewal Of: ▮950 |

"I" includes each borrower above, jointly and severally.    "You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of One Hundred Ninety Eight Thousand Seven Hundred Seventy Five and 81/100    Dollars $ 198,775.81

☒ Single Advance. I will receive all of this principal sum on   . 11/12/2019   . No additional advances are contemplated under this note.

☐ Multiple Advance. The principal sum shown above is the maximum amount of principal I can borrow under this note. On
   I will receive the amount of $    and future principal advances are contemplated.
   Conditions. The conditions for future advances are

☐ Open End Credit. You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on

☐ Closed End Credit. You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

INTEREST. I agree to pay interest on the outstanding principal balance from   11/12/2019   at the rate of   5.500%
per year until 11/15/2024

☒ Variable Rate. This rate may then change as stated below.
   ☒ Index Rate. The future rate will be 3.000% above   the following index rate: the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year. The result of this calculation will be rounded to the nearest 0.125.

   ☐ No Index. The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☒ Frequency and Timing. The rate on this note may change as often as every 12 month(s)
     A change in the interest rate will take effect 45 days after the change in the index
   ☒ Limitations. During the term of this loan, the applicable annual interest rate will not be more than   17.250 % or less than
     5.250 %. The rate may not change more than   3.000 % each rate change
   Effect of Variable Rate. A change in the interest rate will have the following effect on the payments:
   ☒ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.
   ☐

ACCRUAL METHOD. Interest will be calculated on a actual/365    basis.
POST MATURITY RATE. I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☐ at a rate equal to
☒ LATE CHARGE. If a payment is made more than 10    days after it is due, I agree to pay a late charge of 5.000% of the payment of principal & interest or $25.00 whichever is greater
☒ ADDITIONAL CHARGES. In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: See Closing Disclosure
PAYMENTS. I agree to pay this note as follows:
☒ Interest. I agree to pay accrued interest

☒ Principal. I agree to pay the principal

☐ Installments. I agree to pay this note in    payments. The first payment will be in the amount of $
and will be due    . A payment of $    will be due
     thereafter. The final payment of the entire
unpaid balance of principal and interest will be due
ADDITIONAL TERMS.
60 monthly payments of $1,129.57 beginning 12/15/2019, 299 monthly payments of $1,102.27 beginning 12/15/2024 and 1 payment of $1,102.27 on 11/15/2049. This is a variable rate loan and the payment amounts may change after the 60th payment and every 12th payment thereafter. The actual amount of my final payment will depend on my payment record.

☒ SECURITY. This note is separately secured by (describe separate document by type and date): REAL ESTATE MORTGAGES DATED 11-06-2019, 07-31-2014 AND 08-01-2011

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

PURPOSE. The purpose of this loan is REFI + $5192 FOR NEW AIR CONDITIONER

Creative Thinking, Inc.<br>Universal Note<br>Bankers Systems™ VMP®<br>Wolters Kluwer Financial Services ©2018<br>www.creativethinkinginc.com<br>60035 (9/18)<br>UN 5/7/2018<br>[1806L.00]<br>Page 1 of 3

DEFINITIONS. As used in this note, "I," means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns. APPLICABLE LAW. The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this note. No modification of this note may be made without your express written consent. Time is of the essence in this note.
COMMISSIONS. I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.
PAYMENTS. Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).
INTEREST. Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this note, you agree to refund it to me.
INDEX RATE. The index will serve only as a device for setting the rate on this note. If the index is no longer available, I agree and consent to you selecting a substitute index and an alternative margin - all at your sole discretion. You will give me advance notice of your selection. As used in this section, "no longer available" includes, but is not limited to, when an index is terminated, becomes deregulated, or becomes unacceptable for use by a regulator. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.
ACCRUAL METHOD. The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated in this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.
POST MATURITY RATE. For purposes of deciding when the "Post Maturity Rate" applies, the term "maturity" means the date of the last scheduled payment stated in this note or the date you accelerate payment on the note, whichever is earlier.
SINGLE ADVANCE LOANS. If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.
MULTIPLE ADVANCE LOANS. If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.
PAYMENTS BY LENDER. If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.
SET-OFF. I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.
"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.
If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.
You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

REAL ESTATE OR RESIDENCE SECURITY. If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.
DEFAULT. I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you, including this note; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.
REMEDIES. If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.
COLLECTION COSTS AND ATTORNEY'S FEES. I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.
WAIVER. I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).
I waive any defenses I have based on suretyship or impairment of collateral.
OBLIGATIONS INDEPENDENT. I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guaranty or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this note without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this note without your prior written approval.
FINANCIAL INFORMATION. I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.
NOTICE. Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is provided in this note. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address as provided in this note, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |
| | $ | | $ | $ | % $ | | |

Creative Thinking, Inc
Universal Note
Bankers Systems™ VMP®
Wolters Kluwer Financial Services ©2013

www.creativethinkinginc.com

60036 (9/18)
UN 6/1/2013
(1808).00
Page 2 of 3

SIGNATURES. I AGREE TO ALL OF THE TERMS WITHIN THIS NOTE. EXECUTED AS AN INSTRUMENT UNDER SEAL. I acknowledge receipt of a copy of this note on today's date.

**Borrower**

Christopher G. Ratcliff      11/6/19      Kimberly A Ratcliff      11/6/19

CHRISTOPHER G RATCLIFF      Date      KIMBERLY A RATCLIFF      Date

2.                            (Seal)                              (Seal)

_____      Date      _____      Date

                            (Seal)                              (Seal)

**Lender**

The Bank of Tescott

Mike Sample, CFO   11-6-19   _____

Michael Lee Sample, Chief Financial Officer      Date                  Date

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Complete the following for consumer transactions secured by a dwelling.

Loan Origination Organization: The Bank of Tescott
NMLS ID: 403648

Loan Originator: Michael Lee Sample
NMLS ID: 409551

Creative Thinking, Inc
Universal Note
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2018

www.creativethinkinginc.com

50035 (8/18)
UN 5/1/2018
(19081).00
Page 3 of 3



**REBECCA SEEMAN**
**REGISTER OF DEEDS SALINE COUNTY KANSAS**
**Book: 1363 Page: 1890-1894**
Receipt #: 125812CN     Recording Fee: $89.00

**Pages Recorded:5     Mortgage Amount: $10,000.00**
**Date Recorded: 11/12/2019 3:10:54 PM**

3400

The Mid- Kansas Title Co. Inc
217 N. Santa Fe Avenue
Salina, KS 67401
785-823-3759

Return To:   The Bank of Tescott, P O Box 2537 Salina, KS  67402-2537

Prepared By:  The Bank of Tescott P O Box 2537 Salina, KS  67402-2537

——————State of Kansas——————————————Space Above This Line For Recording Data ———

# MORTGAGE
## (With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .11/06/2019....................
    ............ and the parties, their addresses and tax identification numbers, if required, are as follows:
    MORTGAGOR:  CHRISTOPHER G RATCLIFF and KIMBERLY A RATCLIFF,* as husband
    and wife 1402 LORIANNA CT Salina, KS  67401   *a/k/a KIMBERLY RATCLIFF

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their
    signatures and acknowledgments.

    LENDER:
    The Bank of Tescott
    Organized and Existing Under the laws of the state of Kansas
    P O Box 2537
    Salina, KS  67402-2537

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is
    acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this
    Security Instrument, Mortgagor grants, bargains, conveys, mortgages and warrants to Lender the
    following described property  LOT NINE (9), BLOCK FIVE (5), GOLDEN EAGLE ESTATES
    ADDITION TO THE CITY OF SALINA, SALINE COUNTY, KANSAS

    The property is located in .Saline................................... at .1402 LORIANNA COURT..........
                             (County)

    ........................................., .Salina..................................., Kansas .67401............
           (Address)                        (City)                (ZIP Code)

    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water
    and riparian rights, ditches, and water stock and all existing and future improvements, structures,
    fixtures, and replacements that may now, or at any time in the future, be part of the real estate described
    above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at
    any one time shall not exceed $ .10,000.00................................... . This limitation of amount does
    not apply to advances made under the terms of this Security Instrument to protect Lender's security and
    to perform any of the covenants contained in this Security Instrument. The limitation is for the purposes
    set forth in K.S.A. § 9-1101, § 58-2336 and § 79-3102.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other
       evidence of debt described below and all their extensions, renewals, modifications or
       substitutions. *(When referencing the debts below it is suggested that you include items such as
       borrowers' names, note amounts, interest rates, maturity dates, etc.)* PROMISSORY NOTE
       DATED 11-06-2019 IN THE NAME OF CHRISTOPHER G AND KIMBERLY A
       RATCLIFF

KANSAS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                              *(page 1 of 5)*
Exgana © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced or such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the Security Instrument. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property. and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, mortgage and warrant the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

Exper © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013

(page 2 of 3)

12. ASSIGNMENT OF LEASES AND RENTS. Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS. Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. DEFAULT. Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if Lender has a good faith belief that the prospect of any payment, performance or the value of the Property is significantly impaired.

15. REMEDIES ON DEFAULT. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all reasonable costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount includes, but is not limited to, collection agency fees or attorneys' fees and other legal costs and expenses up to 15% of the unpaid amount due and payable, for all persons other than salaried employees of Lender. Lender is entitled to the collection of attorneys' fees or collection agency fees, but not both. This Security Instrument shall remain in effect until released.

17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013

(page 3 of 5)

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law..

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor. .

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

Exceré © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013

*(page 4 of 5)*

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ...........................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) CHRISTOPHER G RATCLIFF        (Date)        (Signature) KIMBERLY A RATCLIFF a/k/a  (Date)
                                                         KIMBERLY RATCLIFF

**ACKNOWLEDGMENT:**

(Individual)
STATE OF Kansas..........................., COUNTY OF Saline..................................} ss.
This instrument was acknowledged before me this 6th......... day of November, 2019...........
by CHRISTOPHER G RATCLIFF and KIMBERLY A RATCLIFF, husband and wife.....
                                                         *a/k/a KIMBERLY RATCLIFF
My commission expires:
                              MIKE SAMPLE    (Notary Public)

MIKE SAMPLE
Notary Public - State of Kansas
My Appt. Expires 7-2-2...

Loan origination organization   The Bank of Tescott
NMLS ID   403648
Loan originator   Michael Lee Sample
NMLS ID   409551

ExperT © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013          (page 5 of 5)





ⁿND ⁿⁿⁿLE SERVICES, INC,
Pⁿ N. 7th Street
Saⁿⁿⁿ, KS 67401
FILE #_____ T114-10953

REBECCA SEEMAN
REGISTER OF DEEDS SALINE COUNTY KANSAS
Book: 1285 Page: 422-426
Receipt #: 86742          Recording Fee: $24.00
Mortgage #: 1007          Mortgage Reg Tax: $46.80
Pages Recorded: 5  CN   Mortgage Amount: $18,000.00

Date Recorded: 8/5/2014 4:45:00 PM

Return To:   THE BANK OF TESCOTT - OHIO BRANCH
             2040 S. OHIO ST. SALINA, KS 67401
Prepared By: THE BANK OF TESCOTT - OHIO BRANCH
             2040 S. OHIO ST. SALINA, KS 67401

————————State of Kansas————————   —————Space Above This Line For Recording Data —————

## MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .07:31:2014...................
............. and the parties, their addresses and tax identification numbers, if required, are as follows:
**MORTGAGOR:**

CHRISTOPHER G. RATCLIFF AND KIMBERLY A. RATCLIFF, HUSBAND AND WIFE
1402 LORIANNA COURT
SALINA, KS 67401

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

**LENDER:**
THE BANK OF TESCOTT - OHIO BRANCH
ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF KANSAS
PO BOX-2537- SALINA, KS- 67401-2537

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, mortgages and warrants to Lender the following described property:

LOT NINE (9), BLOCK FIVE (5), GOLDEN EAGLE ESTATES ADDITION TO THE CITY OF SALINA, SALINE COUNTY, KANSAS

The property is located in .SALINE............................. at ....1402 LORIANNA COURT..........
                              (County)
........................, ..........SALINA........................, Kansas .67401.......
        (Address)                    (City)                          (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .18,000.00......................................... . This limitation of amount does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. The limitation is for the purposes set forth in K.S.A. § 9-1101, § 58-2336 and § 79-3102.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

   LOAN #41404950 DATED 07-31-2014 IN THE AMOUNT OF $190,138.94 IN THE NAME OF CHRISTOPHER G. RATCLIFF, KIMBERLY A. RATCLIFF

KANSAS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Expeⁿⁿⁿ ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013          CR    *(page 1 of 5)*



B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced or such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the Security Instrument. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. PAYMENTS. Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. WARRANTY OF TITLE. Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, mortgage and warrant the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. CLAIMS AGAINST TITLE. Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION. Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. AUTHORITY TO PERFORM. If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

Expere© 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013

*(page 3 of 5)*

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if Lender has a good faith belief that the prospect of any payment, performance or the value of the Property is significantly impaired.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all reasonable costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount includes, but is not limited to, collection agency fees or attorneys' fees and other legal costs and expenses up to 15% of the unpaid amount due and payable, for all persons other than salaried employees of Lender. Lender is entitled to the collection of attorneys' fees or collection agency fees, but not both. This Security Instrument shall remain in effect until released.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
  A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

  B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

ExpereP ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-KS 2/1/2010

*(page 4 of 5)*

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes] ·

☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ..........................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) CHRISTOPHER G. RATCLIFF ..... (Date)      (Signature) KIMBERLY A. RATCLIFF ..... (Date)

**ACKNOWLEDGMENT:**

(Individual)   STATE OF ... KANSAS ..............., COUNTY OF .. SALINE ..............) ss.

This instrument was acknowledged before me this .31ST.... day of ..JULY, 2014 ...............

by .. CHRISTOPHER G. RATCLIFF; KIMBERLY A. RATCLIFF, HUSBAND AND WIFE ...............

My commission expires:

........................................................ (Notary Public)

MIKE SAMPLE
Notary Public - State of Kansas
My Appt. Expires  7-2-15

Loan origination organization THE BANK OF TESCOTT - OHIO BRANCH
NMLS ID 403848
Loan originator MICHAEL LEE SAMPLE
NMLS ID 409551

Expert © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 2/1/2013

Case 26-20026    Doc# 22    Filed 02/20/26    Page 20 of 25



LAND TITLE SERVICES, INC.
106 N 5th Street
Salina, KS 67401
FILE #_____ TIII-5857

REBECCA SEEMAN
REGISTER OF DEEDS SALINE COUNTY KANSAS
Book: 1232 Page: 1412-1417
Receipt #: 72831        Recording Fee: $24.00
Mortgage #: 976 LN    Mortgage Reg Tax: $48.52
Pages Recorded: 8      Mortgage Amount: $18,680.00
Affidavit on file                Rebecca Seeman

Date Recorded: 8/8/2011 3:46:45 PM

Return To: THE BANK OF TESCOTT - SANTA FE BRANCH
600 S. SANTA FE, SALINA, KS 67401
Prepared By: THE BANK OF TESCOTT - SANTA FE BRANCH
600 S. SANTA FE, SALINA, KS 67401

———————State of Kansas——————— ——— Space Above This Line For Recording Data ———

## MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .09/01/2011.......................
.............. and the parties, their addresses and tax identification numbers, if required, are as follows:
MORTGAGOR:
CHRISTOPHER G. RATCLIFF AND KIMBERLY A. RATCLIFF, HUSBAND AND WIFE
1402 LOMANNA CT,
SALINA, KS 67401

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their
signatures and acknowledgments.

LENDER:
THE BANK OF TESCOTT - SANTA FE BRANCH
ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF KANSAS
600 S. SANTA FE SALINA, KS 67401

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is
acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this
Security Instrument, Mortgagor grants, bargains, conveys, mortgages and warrants to Lender the
following described property:

LOT NINE (9), BLOCK FIVE (5), GOLDEN EAGLE ESTATES ADDITION TO THE CITY OF SALINA, SALINE COUNTY, KANSAS.

The property is located in .SALINE............................., at ...1402 LOMANNA CT,...................
                                        (County)
..............................................., SALINA................................, Kansas .67401...............
            (Address)                                        (City)                              (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water
and riparian rights, ditches, and water stock and all existing and future improvements, structures,
fixtures, and replacements that may now, or at any time in the future, be part of the real estate described
above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at
any one time shall not exceed $ .172,680.00.................................... . This limitation of amount does
not apply to advances made under the terms of this Security Instrument to protect Lender's security and
to perform any of the covenants contained in this Security Instrument. The limitation is for the purposes
set forth in K.S.A. § 9-1101, § 58-2336 and § 79-3102.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other
evidence of debt described below and all their extensions, renewals, modifications or
substitutions. (When referencing the debts below it is suggested that you include items such as
borrowers' names, note amounts, interest rates, maturity dates, etc.)

LOAN #11103860 DATED 08/01/2011 IN THE AMOUNT OF $172,680.00 IN THE NAME OF CHRISTOPHER G. RATCLIFF AND
KIMBERLY A. RATCLIFF

KANSAS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Experta© ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-KS 12/1/2003                    (page 1 of 6)

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced or such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the Security Instrument. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, mortgage and warrant the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

ExSpers® ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-XS 12/1/2003 (page 2 of 5)

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if Lender has a good faith belief that the prospect of any payment, performance or the value of the Property is significantly impaired.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all reasonable costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount includes, but is not limited to, collection agency fees or attorneys' fees and other legal costs and expenses up to 15% of the unpaid amount due and payable, for all persons other than salaried employees of Lender. Lender is entitled to the collection of attorneys' fees or collection agency fees, but not both. This Security Instrument shall remain in effect until released.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

ExpereN © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-SC 12/1/2003

*(page 3 of 5)*

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

ExSerEx© © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-KS 12/1/2001

*(page 4 of 5)*

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ...............................
☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) CHRISTOPHER G. RATCLIFF          (Date)     (Signature) KIMBERLY A. RATCLIFF          (Date)

**ACKNOWLEDGMENT:**

(Individual)   STATE OF ...KANSAS............................., COUNTY OF ..SALINE........................} ss.
This instrument was acknowledged before me this ..1ST........ day of ..AUGUST, 2011............
by ..CHRISTOPHER G. RATCLIFF; KIMBERLY A. RATCLIFF, HUSBAND AND WIFE.........................
My commission expires:

MARY DIERCKS
State of Kansas
My Appt. Exp.

ExperA ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-KS  12/1/2000                                 (page 6 of 6)